UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ROBERTA WARREN,

                              Plaintiff,

        v.                                                    **DECISION AND ORDER**
                                                              11-CV-810S

JEH JOHNSON, SECRETARY,
DEPARTMENT OF HOMELAND SECURITY.

                              Defendant.


## I.  INTRODUCTION

        Plaintiffs commenced the present action in September 2011 pursuant to Title VII of

the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq*. Presently before this Court is

Defendant's motion for summary judgment dismissing the Second Amended Complaint.

This Court finds the matter fully briefed and oral argument unnecessary.  For the reasons

that follow, Defendant's motion is granted in its entirety.


## II. BACKGROUND

        Plaintiff was hired by the Immigration and Naturalization Service in 1988 and began

working as a Customs and Border Protection Officer ("CBPO") at the Toronto, Canada

airport in 2005. (Def's Stmt ¶¶ 4, 8,[1] Docket No. 42.)  She was promoted to a Supervisory

CBPO position in January 2008. (Id. ¶ 10.)

        In October 2008, CBPO Elmer Jarvara told a coworker that she (the coworker)

_____

        [1]Unless otherwise stated, Plaintiff has not objected to the cited paragraphs from Defendant's
Statement of Facts.

should apply for a supervisory position because she was black. (Def's Stmt ¶¶ 16-19.) Plaintiff reported Jarvara's comment to both the CBP's Equal Employment Opportunity Office ("EEO") and her supervisor Chief James Hawkins. (Pl's Decl ¶¶ 33-39, Docket No. 47.) The EEO informed her that this was the type of statement that should be handled by Port Director Kenneth Haefner. (Id. ¶ 39.) That complaint "never moved forward because, according to what Chief Hawkins told [Plaintiff], Port Director Haefner would never go forward with this because he was friends with CBPO Jarvara." (Pl's Decl ¶¶ 38, 42.) Plaintiff asserts that it was "common knowledge that Port Director Haefner had his favorites," none of which were female or African-American, and that he would retaliate against those who spoke out against or stood up to him. (Pl's Decl ¶¶ 36, 43, 44, 157, 161, 163, 173.)

In December 2008, Plaintiff intervened in a dispute over a baggage fee between a CBPO and an American Airline agent. (Pl's Decl ¶¶ 47-52.)  As Plaintiff describes the incident, the CBPO had been promised a baggage fee waiver by a different American Airlines agent with whom the CBPO was friends.  (Pl's Decl ¶ 52.) The American Airlines agent at the counter, however, became "confrontational" and demeaning. (Pl's Decl ¶¶ 52, 54.)

As a result, Plaintiff spoke with the American Airlines agent's supervision regarding the rude treatment of the CBPO officer. (Pl's Decl ¶¶ 59-61.)  Plaintiff asked the supervisor if the officer "could get a refund [of the baggage fee] because of the treatment he endured and because he was promised the waiver by his friend," and the supervisor consented to the refund. (Pl's Decl ¶ 63.)  Although Plaintiff emphatically disputes that she used her status as a CBP officer to obtain a refund (Pl's Decl ¶¶ 52, 66), she nonetheless asserts

that it was not uncommon "for airline personnel to waive baggage fees for CBP as a professional courtesy, not due to any compulsion." (Pl's Decl ¶ 57.)

After being informed of the incident, Plaintiff's supervisor Chief James Hawkins consulted with the port's Labor Employee Relations Specialist and Port Director Haefner. (Pl's Decl Ex 6 at 25.)  He was advised to refer the matter to the CBP Office of Internal Affairs, which he did. (Pl's Decl Ex 6 at 25, Ex 7 at 7.)  Hawkins further testified at his deposition that he "reported the incident up the chain of command" because "if I was aware that an employee was trying to use their position to have a bag fee waived, I wouldn't stand for it." (Id. Ex 6 at 24.)  Plaintiff similarly testified that a request by a CBP for a baggage fee waiver could be viewed as using one's position for personal gain. (Cerrone Decl Ex 4 at 55-56.)

Plaintiff was notified on September 3, 2009, that her requested reassignment to West Palm Beach, Florida had been approved. (Def's Stmt ¶ 104.) She was subsequently notified by a letter dated August 13, 2009, that the proposed discipline for charges resulting from this American Airlines incident was termination. (Def's Stmt Facts ¶¶ 71-72; Cerrone Decl Ex 18.)  As a result, the transfer was placed on hold and she was reassigned to administrative duties. (Def's Stmt ¶ 105.)  Plaintiff remained assigned to administrative duties for almost two years while the charges underlying the proposed termination were reviewed. (Pl's Decl ¶ 140.)  In September 2011, only a single charge that Plaintiff had engaged in unprofessional conduct in requesting the baggage fee waiver was sustained, and Plaintiff was suspended for fourteen days without pay. (Def's Stmt ¶ 112; Pl's Decl ¶¶ 140-42.)  The West Palm Beach position was no longer available following the delayed resolution of the disciplinary action, and Plaintiff ultimately transferred to Miami

International Airport in December 2011. (Pl's Decl ¶¶ 272-74; Def's Stmt ¶¶ 120-26; Pl's Stmt ¶ 120.)

Plaintiff commenced the instant action on September 23, 2011. Following the filing of Plaintiff's Second Amended Complaint, Defendant moved for summary judgment dismissing that complaint in its entirety. (Docket No. 40.)

## III. DISCUSSION

"A motion for summary judgment may properly be granted . . . only where there is no genuine issue of material fact to be tried, and the facts as to which there is no such issue warrant the entry of judgment for the moving party as a matter of law." Kaytor v. Elec. Boat Corp., 609 F.3d 537, 545 (2d Cir. 2010). A court's function on a summary judgment motion "is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." Kaytor, 609 F.3d at 545 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). "A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (quoting Anderson, 477 U.S. at 248), cert denied, 540 U.S. 811 (2003). A court must also "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003).

## A.      Timeliness and Exhaustion of Administrative Remedies

Defendant first argues that several of Plaintiff's individual claims must be dismissed because Plaintiff either failed to exhaust the required administrative remedies or failed to timely commence this action following the completion of that process.   The timely exhaustion of administrative remedies is a prerequisite to bringing suit under Title VII. Belgrave v. Pena, 254 F.3d 384, 386 (2d Cir. 2001).   In the case of a federal employee such as Plaintiff, the Equal Employment Opportunity Commission ("EEOC") has established the procedures to be followed in filing an administrative discrimination complaint.   Belgrave, 254 F.3d at 386.

> The EEOC regulations require that the aggrieved employee, *inter alia*, (1) consult with a counselor at the relevant agency's Equal Employment Office ("EEO") within 45 days of the alleged discriminatory act, see 29 C.F.R. § 1614.105(a)(1), and, if the matter is not resolved after a mandatory counseling period, (2) file a formal written administrative complaint ("EEO complaint") within 15 days of receipt of the EEO counselor's notice of final interview and right to file a formal complaint ("EEO notice"), *see id.* § 1614.106(a), (b). The employee may then file a civil action (i) within 90 days of notice of a final agency decision on his or her EEO complaint, or (ii) after 180 days from the filing of the EEO complaint if the agency has not yet rendered a decision.

Belgrave, 254 F.3d at 386.   These time limits are considered analogous to a statute of limitations.   Heins v. Potter, 271 F. Supp. 2d 545, 551 (S.D.N.Y. 2003).

Defendant argues that claims based on (1) Plaintiff's use of sick leave during the February 2008 Super Bowl; (2) CBPO Jarvara's comment to another coworker that "even though she was new she should apply for supervisor because since she is black she will get it;"[2] (3) a May 2009 border crossing incident; and (4) a January 2010 boarding pass

---

[2] This is the allegation as stated in Plaintiff's declaration. (Docket No. 47 ¶ 33.)  It is instead alleged in Plaintiff's second amended complaint that a similar comment was made directly to her. (Sec Am

incident were never raised in an EEO complaint and, as they are now time-barred by the 45-day statute of limitations, must be dismissed. (Def's Mem of Law at 5-6; Cerrone Decl Exs 11, 19, 37.) Defendant further argues that Plaintiff's claim she was improperly denied a requested tour of duty in Barbados must also be dismissed because, although raised in a February 2009 EEO complaint, Plaintiff did not commence this civil action until September 23, 2011, more than 90 days after the final agency decision on August 31, 2009. (Def's Mem of Law at 6.)  Finally, Defendant argues that Plaintiff failed to timely file an administrative complaint with respect to the alleged improperly delayed promotion to the GS-13 paygrade. (Def's Mem of Law at 6.)

Plaintiff only opposes dismissal of the GS-13 paygrade claim; therefore Defendant is granted summary judgment on the other unexhausted or untimely claims. (See Pl's Mem in Opp'n at 24-25; Def's Reply Mem at 1.)  Plaintiff is correct, however, that evidence of otherwise untimely claims may, where appropriate,  constitute relevant and admissible background evidence.  See Jute v. Hamilton Sunstrand Corp., 420 F.3d 166, 176 (2d Cir. 2005) (relevant background evidence may be considered to assess liability on a timely alleged act).

With respect to the GS-13 claim, Plaintiff argues that she first became aware that her promotion to a GS-13 step 1 paygrade was improperly delayed when she received the notification of personnel action changing her paygrade from a GS-12 directly to a GS-13 step 2 on August 28, 2011. (Pl's Mem in Opp'n at 24-25.)  However, "a claim will accrue when the plaintiff knows, or should know, enough of the critical facts of injury and

---

Comp ¶ 13.)

causation to protect himself by seeking legal advice." <u>Kronisch v. United States</u>, 150 F.3d 112, 121 (2d Cir. 1998); " <u>Heins v. Potter,</u> 271 F. Supp. 2d 545, 555 n. 8 (S.D.N.Y. 2003). Plaintiff admits that an initial notification of personnel action promoting her to a GS-13 step 1 paygrade and a subsequent cancellation notification were issued on August 29, 2010. (<u>see</u> Pl's Decl Exs. 30, 31; Pl's Mem of Law at 24.)  The cancellation should have alerted Plaintiff to a possible problem.  Although Plaintiff is correct that a claim does not accrue on a " 'mere hunch, hint, suspicion, or rumor,' " knowledge of the promotion cancellation nonetheless gave "rise to a 'duty to inquire into the possible existence of a claim in the exercise of due diligence.'" <u>Heins</u>, 271 F. Supp. 2d at 555 n. 8 (quoting <u>Kronisch</u>, 150 F.3d at 121).  The requisite inquiry would not have been extensive because, as Defendant highlights, Plaintiff based her administrative complaint that she was improperly denied a paygrade increase on a document released on the CBP intranet in August 2010.  (Def's Reply Mem at 2; Cerrone Reply Decl Ex 48 at 50-51.)  Further, Plaintiff does not argue that this was either a continuing violation, <u>see</u> <u>Fitzgerald v. Henderson</u>, 251 F.3d 345, 359 (2d Cir. 2001), *cert denied* 536 U.S. 922 (2002), or that she was unaware in August 2010 of facts supporting the conclusion that the cancellation was discriminatory in nature.  <u>See</u> <u>Smiley v. Golub Corp.</u>, No. 1:14-CV-0641 (GTS/RFT), 2015 WL 566323, *4 (N.D.N.Y. Feb. 10, 2015).  This claim will therefore also be dismissed as untimely.

## B.   Disparate Treatment

Plaintiff's claims of disparate treatment are analyzed under the familiar burden-shifting framework of <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). <u>See</u> <u>Demoret v. Zegarelli</u>, 451 F.3d 140, 151 (2d Cir.2006).  A prima facie case of disparate treatment is established by evidence that: (1)

a plaintiff is a member of a protected class; (2) her job performance was satisfactory; (3) she suffered an adverse employment action; and (4) the action or actions occurred under conditions giving rise to an inference of discrimination.  Demoret, 451 F.3d at 151.

Defendant argues that several of Plaintiff's remaining claims must fail because there was no adverse employment action.  An adverse employment action is a materially adverse change in the terms and conditions of employment. Galabya v. N.Y.C. Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000)(abrogated on other grounds). "To be materially adverse a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities," such as a termination of employment, demotion with concomitant decrease in salary, or material loss of benefits. Galabya, 202 F.3d at 640 (internal quotation marks omitted).  Defendant specifically addresses Plaintiff's claims[3] arising from (1) an August 2009 border crossing incident; (2) the delay in Plaintiff's transfer from Toronto to Florida; and (3) the denials of Plaintiff's home leave requests in June 2011. (Def's Mem of Law at 9.) In opposition, Plaintiff argues only that the two-year delay in transfer "was a material change in one of the most strictly construed terms of her employment, [because] after five years of foreign service a CBP officer must be transferred back to the United States, and is typically given first choice of location." (Pl's Mem in Opp'n at 19 (expressly conceding that the other allegations listed do not constitute adverse actions).)

Plaintiff does not dispute, however, that this request was for a lateral transfer with no significant changes in duties.  " '[I]f a transfer is truly lateral and involves no significant

---

[3]Defendant further argues that several of the additional claims already dismissed above also failed to establish adverse employment actions.

changes in an employee's conditions of employment, the fact that the employee views the transfer either positively or negatively does not of itself render the denial or receipt of the transfer [an] adverse employment action.' " Williams v. R.H. Donnelley, Corp., 368 F.3d 123, 128 (2d Cir. 2004) (personal disappointment from denial of a cross-country transfer to different city where plaintiff owned a home insufficient to establish "objective indicia of an adverse employment action") (quoting Sanchez v. Denver Pub. Sch., 164 F.3d 527, 532-33 n. 6 (10th Cir. 1998)). Here, the reason for Plaintiff's request was a preference for a warmer climate and a wish to be closer to family. (Pl's Decl ¶ 11.)

Defendant further argues that, even assuming the delayed transfer constituted an adverse employment action, this claim must fail because Plaintiff has not shown sufficient evidence that the circumstances of the adverse action give rise to an inference of discrimination. Demoret, 451 F.3d at 151. Such an inference may be raised by "showing that the employer treated plaintiff less favorably than a similarly situated employee outside [the] protected group." Mandell v. County of Suffolk, 316 F.3d 368, 379 (2d Cir. 2003) (internal quotation marks omitted). "A plaintiff relying on disparate treatment evidence must show she was similarly situated in all material respects to the individuals with whom she seeks to compare herself." Id. (internal quotation marks omitted); see Rosinski v. American Axle & Mfg., Inc., 663 F. Supp. 2d 197, 204 (W.D.N.Y. 2009), aff'd 402 F. App'x 535 (2d Cir. 2010). "Conclusory statements that 'similarly situated' employees outside the protected class were treated more favorably are not sufficient to defeat summary judgment." Rosinski, 663 F. Supp. 2d at 204 (citation omitted). Instead, a plaintiff must "at least provide an objectively identifiable basis for comparability between herself and other employees." Id. (internal quotation marks and citation omitted)

9

Defendant correctly asserts that there is insufficient evidence to support the conclusion that the delay in Plaintiff's transfer to Florida occurred under conditions giving rise to an inference of discrimination.  Plaintiff argues that Defendant's reliance on her pending disciplinary matter as the reason for denying her transfer is pretext.  She asserts that, just prior to her transfer request, a male supervisor CBPO who had a pending disciplinary matter and was assigned to administrative duties as a result was nonetheless permitted to transfer from Toronto to Maine. (Pl's Decl ¶ 249.)   However, Defendant submitted evidence of the CBP policy as of June 2009.  Contrary to Plaintiff's assertion, (Pl's Opp'g Stmt of Facts ¶ 106, Docket No. 49-1), a plain reading of this policy permits a transfer during a disciplinary inquiry upon the consent of the sending and receiving station only where a proposal letter of discipline has not yet been served upon the employee to be transferred.  (Cerrone Decl Ex 30, Docket No. 41-2 at 69.) Notably, the proposal letter starts the formal process of notification as well as the employee's opportunity to be heard on the proposed discipline.  (See Cerrone Decl Ex 34 (detailing Plaintiff's responses to the initial proposal letter).)   This is consistent with Plaintiff's own version of events, inasmuch as she states her own transfer was initially approved, but that  "everything stopped" when she received the proposed letter of removal in August 2009. (Pl's Decl ¶¶ 117, 232, 259.) Plaintiff also concedes that, at the time the male SCBPO transferred to Maine, discipline had not yet been served. (Pl's Decl  ¶¶ 249, 251, Ex 5 at 34-35; see Haefner Decl ¶¶ 114-16, Docket No. 54.)

Similarly, Plaintiff was not similarly situated with the non-supervisor CBP officer who transferred while under disciplinary review following an alleged incident involving a weapon. (Pl's Aff 177 Ex 7 at 10; Pl's Mem in Opp'n at 4-5.)  That officer had a contractual right to

transfer as established by the collective bargaining agreement, an agreement which did not cover supervisory employees such as Plaintiff. (Reed Decl ¶¶ 13-20.)  Further, the officer also transferred prior to the imposition of a proposed disciplinary action and resigned soon thereafter. (Reed Decl ¶¶ 14-16, Docket No. 56.) Defendant is therefore granted summary judgment on Plaintiff's disparate treatment claims.

## C.    Retaliation

Title VII makes it unlawful for an employer to discriminate against an employee "because he [or she] has opposed any practice made an unlawful employment practice by this subchapter, or because he [or she] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).

The merits of Plaintiff's retaliation claims in the instant case are also considered under the burden-shifting analysis of McDonnell Douglas Corp. v. Green. 411 U.S. 792, 802-05, 93 S. Ct. 1817, 36 L. Ed. 668 (1973); see Kaytor, 609 F.3d at 552. Plaintiff must first establish a prima facie case by showing that (1) she participated in an Title VII-protected activity; (2) her participation was known to Defendant; (3) Defendant thereafter subjected Plaintiff to a materially adverse action; and (4) there was a causal connection between the protected activity and the adverse action. Kaytor, 609 F.3d at 552.

A plaintiff's initial burden is generally minimal. Zwan Kwan v. Andalex Group LLC, 737 F.3d 834, 844 (2d Cir. 2013). Unlike a disparate treatment claim, Title VII's retaliation provision does not require that the allegedly adverse act bear on the terms or conditions of employment; instead the proper inquiry is "whether the employer's actions were harmful to the point that they could well dissuade a reasonable worker from making or supporting

11

a charge of discrimination." Hicks v. Baines, 593 F.3d 159, 165, 169 (2d Cir. 2010) (internal quotation marks and brackets omitted); see Burlington Northern & Santa Fe Ry. Co. v. White, 548 U.S. 53, 57, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006).  Further, the plaintiff need not prove that her underlying complaint of discrimination had merit, but only that it was motivated by a good faith, reasonable belief that the underlying employment practice was unlawful." Zann Kwan, 737 F.3d at 843(internal citations and quotation marks omitted); Farren v. Shaw Environmental, 852 F. Supp. 2d 352, 361 (W.D.N.Y. 2012), *aff'd* 510 F. App'x 44 (2013). Nonetheless, Title VII is not a general civility code for the workplace, and "petty slights or minor annoyances that often take place at work and that all employees experience" do not constitute actionable retaliation. White, 548 U.S. at 68; Hicks, 593 F.3d at 165. "Thus, '[t]he antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm.'" Hicks, 593 F.3d at 165 (quoting White, 548 U.S. at 67).

Here, Plaintiff's retaliation claim is grounded in her October 2008 reporting of CBPO Jarvara's discriminatory comment.  (Pl's Mem in Opp'n at 4-7.)  She argues that this incident caused Port Director Haefner to retaliate against her by referring her to internal affairs in December 2008 following the American Airlines incident, and that all other adverse actions resulted from that referral. (Pl's Mem in Opp'n at 6-7.)  Although Defendant argues that there is no evidence that Haefner knew about either the coworker's discriminatory comment or Plaintiff's reporting of the incident to her supervisor and the EEO office, Defendant concedes that general corporate knowledge, as well as the temporal proximity of the two events, is sufficient to establish a prima facie case of retaliation.  (Def's Reply Mem at 8-9); see Zwan Kwan, 737 F.3d at 844.

12

Defendant therefore argues that this claim must be dismissed because there was a legitimate, non-retaliatory reason for her referral to internal affairs, and the temporal proximity between the two events alone is insufficient to raise an issue of fact regarding pretext. Specifically, Defendant argues that the investigation of the American Airlines incident in December 2008 was proper because there was an issue of whether Plaintiff improperly used her position for gain in violation of CBP rules. (Def's Mem of Law at 12, 18; Def's Reply Mem at 9-10.) Plaintiff disputes the context of this incident; for instance, she asserts that she intervened due to the airline representative's mistreatment of the CBP officer under her supervision and thought a fee waiver was appropriate compensation for the poor service. (See Pl's Decl ¶¶ 52-54.) She does not dispute the basic facts, however, that she intervened with the airline agent's supervisor and expressly requested that the officer's baggage fee be waived. (Cerrone Decl Ex 4 at 43-45; Pl's Decl ¶¶ 49-75.) Further, Plaintiff acknowledged at her deposition that a CBPO's acceptance of a baggage fee waiver could be viewed as the use of one's position for personal gain. (Cerrone Decl Ex 4 at 55-56.) Defendant has therefore submitted sufficient evidence of a legitimate, non-retaliatory reason for Plaintiff's referral to internal affairs in December 2008.

The burden therefore shifts back to Plaintiff, whose submissions fail to raise a material issue of fact whether it was "more likely than not the employer's decision was motivated . . . by an intent to retaliate against [her]." El Sayed v. Hilton Hotels Corp., 627 F. 2d 931, 933 (2d Cir. 2010). The absence of evidence that Haefner was in fact aware of Plaintiff's October 2008 EEO complaint undermines any conclusion that he had a retaliatory motivation for having Plaintiff referred to internal affairs. See Zwan Kwan, 737 F.3d at 844 n. 4 (distinguishing between knowledge and causation elements). Although

13

temporal proximity may be sufficient to support a prima facie case of retaliation under Title VII, it is alone insufficient to satisfy Plaintiff's burden of producing some evidence of pretext, El Sayed, 627 F.3d at 933, particularly where Plaintiff has the burden of establishing that her protected activity was a but-for cause of the alleged adverse action by Defendant. Univ. of Texas Southwestern Med. Ctr. v. Nassar, – U.S. –, 133 S. Ct. 2517, 2534, 186 L. Ed. 2d 503 (2013)

## D.    Hostile Work Environment

Plaintiff also asserts that she was subject to a hostile work environment on the basis of her gender.[4] A hostile work environment exists where the complained of conduct: (1) is objectively severe or pervasive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's sex. Patane v. Clark, 508 F.3d 106, 113 (2d Cir. 2007). To determine whether this threshold has been reached, "courts examine the case-specific circumstances in their totality and evaluate the severity, frequency, and degree of the abuse." Alfano v. Costello, 294 F.3d 365, 374 (2d Cir. 2002). Although a single incident may be extreme enough to give rise to a hostile work environment, generally the incidents must be more than " 'episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.' " Alfano, 294 F.3d at 374 (quoting Perry v. Ethan Allen, Inc., 115 F.3d 143, 149 (2d Cir. 1997)).

Plaintiff argues that, as the only female supervisor, she was purposefully excluded from Port Director Haefner's "all boys club." (Pl's Mem in Opp'n at 22-23.) In support of this

---

[4]Plaintiff's complaint makes reference to both race and gender as a basis for discrimination, however, her opposition to Defendant's motion on this point discusses only gender.

contention, she asserts that she was assigned to administrative duties for more than two years, precluded from the tower and quarantined in her office, and forbidden from speaking with staff, thereby "placing her on a lower rung than the male supervisors." (Pls' Mem in Opp'n at 23.)  To support her assertion that this mistreatment was gender-based, Plaintiff relies on Chief Hawkins' response when asked if he had any reason to believe Plaintiff's race or sex was a factor in the issuance of the proposal of termination which led to administrative assignment:

> I do believe that the Port Director's haphazard management style has contributed greatly to the situation in Toronto.  The Port Director has allowed other male Supervisors to complain to him about having to work with supervisor Warren.  The Port Director took this all into account when I would approach him with suggestions of providing additional training to [Plaintiff], to which he refused to get involved.  As he said he would, he planned to give her enough rope to hang herself.  Supervisor Warren was the only female Supervisor out of a group of approximately 12 to 14 Supervisors.  The Port Director would specifically favor certain Supervisors who were able to come and "hang out" in the Supervisor Tower and use profanity, tell crude and inappropriate jokes, etc. [Plaintiff] was not in that circle.

(Pl's Aff ¶¶ 168-69 Ex 7 at 11-12.)  In response to a question whether the proposal for Plaintiff's termination was retaliatory, Hawkins further stated:

> I have reason to believe the entire situation could have been avoided had the Port Director managed the staff much better than he did.  He allowed subordinate employees to sit with him and use profanity and tell crude and offensive jokes.  For those that were not in his inner circle, he could care less about.

(Id. at 12)  There is no further detail provided regarding the complaints that were "allowed" to be made to Port Director Haefner, and Hawkins does not actually state that these complaints were based on the fact that Plaintiff is a woman.  Nor is there any indication of how often these complaints were made or if Plaintiff overheard or was otherwise aware of them at the time.

Moreover, even considering the entirety of the allegations, Plaintiff herself has consistently stated the Port Director's inappropriate and retaliatory actions have been directed against anyone who complained or otherwise acted against his wishes regardless of race or gender. Specifically, Plaintiff and Hawkins assert that Haefner used false or inflated misconduct charges, similar to those filed against Plaintiff, to also retaliate against Hawkins and SCBPO Clavette, both white males.  (See Pl's Aff ¶¶ 153-64, Ex 6 at 56-57, Ex 7 at 3-5.) Such gender-neutral conduct, while wildly inappropriate, is insufficient to support an employment discrimination claim.  "Title VII only protects employees from improper discriminatory intimidation; it does not reach so far as to protect plaintiffs from undiscriminating intimidation by bullish and abusive supervisors." Curtis v. Airborne Freight Corp., 87 F. Supp. 2d 234, 250 (S.D.N.Y. 2000); see Jerram v. Cornwall Cent. Sch. Dist., 464 F. App'x 13, 15 (2d Cir. 2012) (affirming dismissal of hostile work environment claim in the absence of evidence that abrasive and disrespectful supervisor treated female employees any worse than male employees); see generally Pantane, 508 F.3d at 113 (hostile work environment claim requires a showing that conduct complained of occurred *because* of plaintiff's gender).  This claim is therefore dismissed as well.

## IV. CONCLUSION

Defendant established his entitlement to summary judgment with respect to each of Plaintiff's claims, therefore the motion is granted and the Second Amended Complaint is dismissed.

## V. ORDERS

IT HEREBY IS ORDERED that Defendant's summary judgment motion (Docket

No. 40) is GRANTED and the Second Amended Complaint is dismissed;

FURTHER, that the Clerk of the Court shall close this case.

SO ORDERED.

Dated:   March 18, 2015
           Buffalo, New York

<u>/s/William M. Skretny</u>
WILLIAM M. SKRETNY
Senior United States District Judge